## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| GLADYS GARDNER,<br>6803 Eastridge Road<br>Gwynn Oak, Baltimore County, Maryland<br>21207-6410<br>*Individually and on Behalf of All Persons*<br>*Similarly Situated*,<br><br>                       *Plaintiff*,<br><br>v.<br><br>GMAC, Inc.,<br>200 RENAISSANCE CENTER<br>DETROIT, MI 48265 ,<br><u>Serve on</u>:<br>The Corporation Trust Inc.<br>351 West Camden Street<br>Baltimore, MD 21201<br>                  *Defendant*. | Civil Action No. 10-1094 |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Gladys Gardner ("Named Plaintiff"), on her own behalf and on behalf of all others similarly situated, alleges and states as follows:

### INTRODUCTION

1.      This is a Complaint against GMAC, Inc. (GMAC) for violating statutory, common law and contractual obligations in connection with the repossession and sale of motor vehicles. Named Plaintiff and the Class are persons whose motor vehicles were financed in Maryland through credit contracts held by GMAC, but whose vehicles were repossessed, and ultimately sold by GMAC. GMAC failed to comply with the statutory requirements for providing notice in connection with the repossession and sale of the vehicles of Named Plaintiff and the Class.

- 1 -

2.      For example, GMAC told Named Plaintiff that it would be selling her vehicle at a "public sale" and told her she could "attend and bring bidders if you want."  Named Plaintiff went to the location indicated in GMAC's notice, and brought two people with her to observe what happened at the sale – but she and her companions were denied access to the sale.  GMAC had not disclosed that a $1,000 cash deposit was required to even attend, let alone bid at this so-called "public sale." Accordingly, Named Plaintiff, a member of the public, was prevented from even observing what GMAC called a public sale. In fact, for this and other reasons, the sale was not public – it was private.  Maryland law requires detailed disclosures regarding private sales, and GMAC did not provide those disclosures.  Accordingly, GMAC violated Maryland law and is liable to Named Plaintiff and the Class as discussed herein.

3.      GMAC's wrongful acts have hurt many consumers.  GMAC provides secured automobile financing for many borrowers in Maryland. Each year GMAC repossesses a large number of motor vehicles from Maryland residents in connection with this automobile financing.  In the event the borrower fails to reinstate the contract or redeem the vehicle following repossession, GMAC sells the customer's vehicle and applies the proceeds toward the balance on the customer's account.  In most cases, the sum obtained by GMAC for these vehicles is not sufficient to pay off the customer's motor vehicle loan, resulting in a deficiency balance.

4.      GMAC's practice is to send Maryland borrowers form notices of the repossession prior to the sale ("pre-sale notice") and form notices of the claimed deficiency ("post-sale notice") after the sale in which it demands payment.  If GMAC is not able to make payment arrangements with the borrower, it pursues collection action, including filing suit against the borrower.

5.      Through its use of deficient pre-sale and post-sale form notices, GMAC has deprived Maryland borrowers of valuable rights mandated by law.  Specifically, GMAC's notices violated

Maryland law by (1) stating that the borrowers' cars would be sold at a public sale when, in fact, they are sold at private sales, (2) failing to provide the number of bids sought and received at the private sales, (3) failing to provide the names and addresses of the winning bidders at the private sales and (4) failing to provide a statement about the condition of the vehicle at time of repossession which would affect its market value.  The legislature insisted that borrowers whose repossessed vehicles had been sold at a private sale be provided this information so that they could investigate whether the sale had been conducted in a commercially reasonable manner as required by state law.

6.      As a result, Maryland law prohibits GMAC from collecting any alleged deficiency which remains after sale of the repossessed vehicles.  Maryland law also enables Named Plaintiff and the Class to seek and recover compensatory damages, statutory penalties and damages, and declaratory and injunctive relief.  GMAC's violations of Maryland law have enriched it unfairly at the expense of Maryland borrowers, a practice this suit seeks to end.

7.      The use of deficient form pre-sale and post-sale notices which omit material information required by Maryland law makes this case particularly suitable for resolution through a class action lawsuit.

## PARTIES

8.      Gladys Gardner is a resident of Maryland who entered into a contract to purchase a vehicle from a Maryland dealership, and who entered into a Maryland credit contract by which she financed the purchase of her vehicle.  The financing was extended by GMAC.

9.      GMAC, Inc. is a Delaware financial services corporation, with its headquarters located in Detroit, Michigan.  GMAC regularly conducts business in Baltimore County, Maryland.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), as the matter

in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action case in which the Named Plaintiff is a citizen of the State of Maryland, and the Defendant is a citizen of a State other than Maryland.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to the claims herein occurred, and a substantial part of property that is the subject of the action is situated within this District.

## FACTUAL AND LEGAL ALLEGATIONS

### *Ms. Gardner's Transaction*

12.     In July, 2006, Ms. Gardner purchased a new 2006 Chevrolet Impala, VIN 2G1WD58CX69434024 (the "Impala") from Jerry's Chevrolet, a Maryland motor vehicle dealer. Ms. Gardner's purchase was financed through a Retail Installment Sale Contract ("RISC") (attached hereto as **EXHIBIT 1**).

13.     The RISC affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law Article (*i.e.*, Maryland's Credit Grantor Closed End Credit Provisions -- hereafter "CLEC") (**EXHIBIT 1**, ¶ 7, stating that "Federal Law and Maryland law apply to this Contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code.").

14.     Ms. Gardner purchased the Impala primarily for personal, household and family purposes.

15.     The dealership, Jerry's Chevrolet, arranged the financing for Ms. Gardner's purchase of the Impala.  The RISC was assigned to GMAC, which received monthly payments from Ms. Gardner.

16.      On or about December 8, 2008, GMAC and/or its agents seized and repossessed the

- 4 -

Impala.

17.     GMAC sent a notice to Ms. Gardner on December 8, 2009, telling her that the car would be sold at a public sale on January 5, 2010, at 10:00 a.m., at Manheim's Balt-Wash, 7120 Dorsey Run Road, Elkridge, MD 21075.  *See* Pre-Sale Notice (attached hereto as **EXHIBIT 2**). The notice states "You may attend the sale and bring bidders if you want." *Id.*

### *The Manheim Sale And Its $1000 Entrance Fee*

18.     The sale conducted at Manheim's Balt-Wash on Tuesday, January 5, 2010, at 10:00 a.m., was not a public sale, rather it was a private sale.  Manheim's Balt-Wash generally restricts attendance at its sales to only licensed automobile dealers.  It conducts sales every other Tuesday (as January 5, 2010 was) which it describes as "public" (the "Tuesday Sales").  However, according to Manheim's "Public Sale Regulations" (attached hereto as **EXHIBIT 3**), every person who is not a licensed automobile dealer and wishes to attend the Tuesday Sales must deposit $1,000 in *cash only* in order to attend and participate in the Tuesday Sales.

19.     On information and belief, if an attendee purchases a vehicle at the Tuesday Sale, the $1,000 deposit is credited toward the purchase price.  Upon information and belief,  if the attendee does not purchase a vehicle at the Tuesday Sale, the $1,000 deposit is returned by "Auction Check" to the person on Thursday, but is not returned immediately and not returned in cash, a practice which creates a significant barrier to attendance and participation by members of the public.

20.     Defendant knows that a person whose vehicle recently was repossessed is unlikely to be able to pay the required $1,000 deposit or entrance fee.  Persons who are unable to attend the sale because of the $1,000 deposit or entrance fee are at a significant disadvantage when it comes to either bringing bidders, or investigating and evaluating whether the sale was conducted in a commercially reasonable manner and in defending themselves in any subsequent action brought by

the credit grantor for an alleged deficiency balance.

21.     These very concerns underlie CLEC's requirement that when a private sale is conducted, the borrower is entitled to receive information about the identity of the buyer at the auction, the number of bids sought and received and a statement of the condition of the vehicle at the time of repossession which would cause the vehicle to be worth more or less than other vehicles of like kind and quality.  CLEC §12-1021(j)(2).

22.     The Pre-Sale Notice attached as **EXHIBIT 2** does not disclose anywhere that a $1,000 cash deposit is required to attend the so-called "public sale."  No other notice provided to Ms. Gardner or other members of the Class disclosed the requirement that a $1,000 cash deposit is required to attend the so-called "public sale."

23.     Similarly, members of the public who may be interested in attending and participating in the Tuesday sales are not afforded advance notice of the $1,000 deposit or entrance fee.  Moreover,. the Tuesday Sales are not advertised or publicized to the public in any meaningful way.  In fact, the Manheim website includes a list of locations where public auctions are held, https://www.manheim.com/publicauctions/sales.do, and conspicuously fails to identify Manheim's Balt-Wash as a location holding a public auction.  The portion of the Manheim website dedicated to Manheim's Balt-Wash fails to mention any public sale at that location.  Although a small advertisement of the Tuesday Sales has been published in the past, the ad is *pro forma,* inconspicuous and is not reasonably calculated to attract buyers from the general public. Unlike ads for competing auctions which genuinely seek to attract buyers from the general public, this ad fails to identify the number or kind of vehicles which will be offered for sale or to offer any information which would entice the public to attend and bid.

24.     In fact, no meaningful notice is given to the general public about the Tuesday Sales.

Upon information and belief, the Tuesday Sales, by design, are not and have not historically been attended by substantial numbers of persons other than licensed automobile dealers. In the few instances where the Tuesday Sales are disclosed directly to members of the public – for example, in repossession sale notices to persons such as Ms. Gardner or members of the Class – the requirement of a $1,000 cash deposit is not disclosed.

25.     Manheim's Balt-Wash does not offer or provide to the public prior to the sale any written policies or meaningful notice regarding the Tuesday Sales disclosing the required $1,000 cash deposit or any other aspects of the Tuesday Sales.   Due to the lack of publicity or advertising of the Tuesday Sales, and due to the requirement of a $1,000 cash deposit, anyone who arrives on the day of an auction will be turned away unless, by happenstance, that person brought $1,000 in cash.  As a result, the Tuesday Sales – consistent with all of Manheim's Balt-Wash other sales - are effectively restricted to licensed automobile dealers, and are private, rather than public, sales.

26.     On January 5, 2010, Ms. Gardner attempted to attend the sale of her vehicle, along with two companions. All were denied entrance to the sale because none of them had the required $1,000 in cash.  Ms. Gardner and her companions were completely unaware of the $1,000 entrance fee requirement before attempting to attend the so-called "public sale."

27.     Upon information and belief, the Tuesday Sales are nominally called "public sales" to give credit grantors a purported basis for not giving the detailed notices required for private sales under Maryland law, while the requirement of the $1,000 deposit is intentionally designed to discourage members of the public from actually attending the Tuesday Sales, and has the intended effect.  In fact, the $1,000 deposit requirement renders the sales private, not public, sales as a matter of law.  The lack of meaningful advertising and the lack of public attendance further demonstrate that the Tuesday Sales are private, and not public, sales. The Tuesday Sales are "public sales" in

name only.

28.     On or about January 11, 2010, GMAC sent Ms. Gardner a form post-sale notice advising her that the Impala was sold, showing the calculations by which GMAC determined a deficiency in the amount of $12,195.81. *See* Post-Sale Notice (attached hereto as **EXHIBIT 4**). The post-sale notice did not include information required under CLEC when a vehicle is sold at a private sale, including (1) the name and address of the purchaser, (2) the number of bids sought, (3) the number of bids received, and (4) any information about the condition of the vehicle at the time of sale that would cause an increase or decrease above or below the market value for goods of like kind and quality.

29.     On or about February 10, 2010, Ms. Gardner received a collection letter from United Recovery, Inc., seeking payment of the alleged deficiency, now claimed to be $12,205.81.

### *Statutory Notice Requirements*

30.     Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Comm. Law §§ 12-1001 *et seq.*, govern the extension of credit to Ms. Gardner and all members of the Class.  CLEC, § 12-1021(j) requires that credit grantors such as GMAC sell repossessed vehicles in a commercially reasonable manner, provide a full accounting of sale proceeds and disclose certain material facts to its borrowers:

> (j)  *Sale or auction – Authorized; notice; commercially reasonable manner; accounting.* –
>
>        *   *   *
>
>     (2) **In all cases of a private sale of repossessed goods under this section, a full accounting shall be made to the borrower in writing** and the seller shall retain a copy of this accounting for at least 24 months. **This accounting shall contain the following information:**
>
>        *   *   *

**(vii) The purchaser's name, address, and business address;**
**(viii) The number of bids sought and received; and**
**(ix) Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.**

\*   \*   \*

Md. Code Ann., Comm. Law 12-1021(j) (emphasis supplied).

31.     GMAC's form post-sale notice (**EXHIBIT 4**) violates CLEC § 12-1021(j)(2)(vii), (viii), and (ix) because it fails to provide (1) the name and address of the purchaser, (2) the number of bids sought, (3) the number of bids received, and (4) any information about the condition of the vehicle at the time of sale that would cause an increase or decrease above or below the market value for goods of like kind and quality.

32.     On information and belief, Plaintiff avers that as a part of its routine business practices in Maryland, GMAC sold vehicles it repossessed from Plaintiff and other members of the Class at private sales such as the Tuesday Sales, and sent similar unfair and deceptive form post-sale notices to all of its other Maryland borrowers whose repossessed vehicles were sold at private sale and that GMAC's form post-sale notice to all members of the Class also failed to provide the Class with the full disclosures required by CLEC §12-1021(j)(2) as described above.

33.     GMAC's failure to provide post-sale notices including all material facts whose disclosure is mandated by CLEC § 12-1021(j) deprived Named Plaintiff and members of the Class of information and benefits to which they were entitled by law.  The disclosures mandated by CLEC § 12-1021(j) are intended to help borrowers like Named Plaintiff and the Class protect their interests in their vehicles, and to hold credit grantors such as GMAC accountable for selling the vehicles as prescribed by law.

- 9 -

34.     Absent strict compliance with the statutorily required notices regarding repossession, including the pre-sale and post-sale notices, a Maryland credit grantor may not lawfully assess or collect any deficiency from consumer borrowers, or any other person liable under the contract, following disposition of the repossessed property.  CLEC specifically provides:

> If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement.

CLEC § 12-1021(k)(4).

35.     In addition, absent strict compliance with the statutorily required pre-sale and post-sale notices regarding repossession, a credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan."  CLEC § 12-1018(a)(2).  A credit grantor who knowingly violates any provision of CLEC is liable for statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC.  CLEC § 12-1018(b).

36.     On information and belief, Named Plaintiff avers that notwithstanding GMAC's failure to comply with CLEC's mandatory pre-sale and post-sale notice requirements, GMAC knowingly has assessed, demanded and attempted to collect or have collected alleged deficiency balances from Named Plaintiff and the Class, for which Named Plaintiff and the Class were not liable as a matter of law.  GMAC has made unlawful collection demands to Named Plaintiff and the Class, has falsely represented to those borrowers that deficiency balances were owed, has collected money from borrowers to which it was not entitled, and has threatened to sue, and has  sued, borrowers who did not owe any deficiency.

37.     At all relevant times, GMAC had actual knowledge that Named Plaintiff and the Class were not liable for any deficiency as a result of GMAC's failures to comply with CLEC, but has

nevertheless persisted in its unlawful collection activities. GMAC has not returned to Named

Plaintiff and the Class the interest, costs, fees and other charges which it must rebate on each credit

contract pursuant to CLEC § 12-1018(a)(2).  Unless and until this Court grants the declaratory and

injunctive relief Plaintiff seeks through this action, GMAC will continue to engage in business

practices which violate CLEC and which result in deficiency judgments to which GMAC is not

entitled.

## CLASS ACTION ALLEGATIONS

38.     Named Plaintiff brings this action on behalf of a Class which consists of:

> All consumers whose vehicles were repossessed and sold by GMAC in connection
> with a credit contract governed by CLEC.

> Excluded from the Class are: (a) those individuals who now are or have ever been
> executives of the Defendant and the spouses, parents, siblings and children of all
> such individuals; (b) any individual against whom a judgment has been granted in
> favor of GMAC on the account at issue on or before the date of the filing of this
> Complaint; (c) any individual who was granted a discharge pursuant to the United
> States Bankruptcy Code or state receivership laws after the date of his or her
> Installment Contract; and (d) any individual otherwise obligated on an Installment
> Contract account that was satisfied more than six months prior to the filing of this
> Complaint.

39.     The Class, as defined above, is identifiable.  The Named Plaintiff is a member of the

Class.

40.     The Class consists, at a minimum, of several hundreds (and likely thousands) of persons

who entered into credit contracts in Maryland which were assigned to GMAC and whose vehicles

were subsequently repossessed and sold, and is thus so numerous that joinder of all members is

clearly impracticable.

41.     There are questions of law and fact which are not only common to the Class but which

predominate over any questions affecting only individual class members.  The common and

predominating questions include, but are not limited to:

(a) Whether the Tuesday Sales are private sales;

(b) Whether GMAC failed to provide the full disclosures required by and compliant with CLEC §12-1021(j)(2) to borrowers whose vehicles were repossessed and sold at a private sale;

(c) Whether GMAC knowingly violated CLEC provisions and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(d) Whether GMAC breached the credit contracts accepted for each Class member by failing to comply with CLEC;

(e) Whether GMAC assessed, attempted to collect and/or collected deficiency balances from members of the Class that it had no legal right to demand or collect, and for which the Class members were not liable; and

(f) Whether declaratory and injunctive relief is proper to prevent GMAC from continuing to seek deficiency judgments in violation of CLEC and to compel GMAC's compliance with CLEC.

42.     Claims of Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of FED. R. CIV. P. 23(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of GMAC.

43.     Named Plaintiff will fairly and adequately protect the interests of the Class within the meaning of FED. R. CIV. P. 23(a)(4).   Named Plaintiff is committed to vigorously litigating this matter.   Further, Named Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

44.     Neither Plaintiff nor Plaintiff's counsel has any interests which might cause them not to vigorously pursue this claim.

45.     The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for GMAC within the meaning of FED. R. CIV. P. 23(b)(1)(A).

46.     GMAC's actions are generally applicable to the respective Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole within the meaning of FED. R. CIV. P. 23(b)(2).

47.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of FED. R. CIV. P. 23(b)(3).

48.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

49.     Plaintiff's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## CAUSES OF ACTION

### COUNT ONE
### (MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS)

50.     Named Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

51.     CLEC permits credit grantors such as GMAC to provide closed end credit under certain circumstances and subject to certain limitations, including compliance with provisions relating to repossession and sale of motor vehicles.  If a credit grantor timely provides a borrower with the

- 13 -

required pre-sale, post-sale and/or other notices after repossession and includes all of the required information mandated by CLEC § 12-1021, the credit grantor may obtain a deficiency judgment and retain the interest, costs, fees and other charges assessed during the course of its extension of credit.

52.     In the event, however, that the credit grantor fails to provide the required timely pre-sale, post-sale and/or other notices after repossession, including all of the required information mandated by CLEC § 12-1021, the credit grantor may not obtain a deficiency judgment [CLEC § 12-1021(k)(4)] and must forfeit all interest, costs, fees and other charges collected since the inception of the loan.  CLEC §12-1018(a)(2).

53.     In violation of CLEC  §12-1021(j)(2), GMAC failed to provide Named Plaintiff and members of the Class with the disclosures mandated by CLEC after the private sale of repossessed motor vehicles, including: (i) the purchaser's name, address, and business address; (ii) the number of bids sought and received; and (iii) the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.

54.     GMAC knowingly engaged in these CLEC § 12-1021 violations.

## COUNT TWO
## (BREACH OF CONTRACT)

55.     Named Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

56.     CLEC was in effect at the time the credit contracts of Named Plaintiff and all members of the Class were signed by them.  The provisions of the CLEC statute become a part of the contract just as if the parties expressly included the CLEC provisions in their credit contracts. In addition, GMAC explicitly referred to and incorporated CLEC in its contracts with Named Plaintiff and the

other members of the Class.

57.     When GMAC violated CLEC as set forth above, it materially breached its contracts with Named Plaintiff and the members of the Class.

58.     As a result of GMAC's breach of contract with Named Plaintiff and members of the Class, Named Plaintiff and members of the Class have been damaged.  Named Plaintiff and members of the Class have been deprived of the substantial rights granted to them by CLEC, including: (i) the information needed to determine whether the sale of the vehicle was commercially reasonable; (ii) the ability to determine whether there should have been surplus funds available for return by GMAC; and (iii) the information needed to defend against any suit for a deficiency judgment.

59.     In addition, Named Plaintiff and the Class also sustained financial damages as a result of GMAC's failure to return all of the interest, costs, fees and other charges collected on their loans, and Named Plaintiff and the Class sustained other damages and losses.

## COUNT THREE
## (DECLARATORY AND INJUNCTIVE RELIEF UNDER MD. CTS. & JUD. PRO. § 3-406)

60.     Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

61.     This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiff and members of the Class and the consumer protections embodied in Maryland's Credit Grantor Closed End Credit Provisions.

62.     GMAC maintains it may collect a deficiency balance from Named Plaintiff and members

of the Class even though GMAC failed to provide Named Plaintiff and members of the Class with timely and accurate post-sale and/or other notices required by Maryland's Credit Grantor Closed End Credit Provisions.

63.     Named Plaintiff and members of the Class have received or will receive collection notices from GMAC and/or debt collectors demanding payment of the alleged deficiency balances, and have been sued or will be sued for collection of the sums which GMAC claims are due. Moreover, GMAC also notifies credit reporting agencies (including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and history of Named Plaintiff and the Class.

64.     These practices continue and will continue unless and until this Court declares and affirms that GMAC may not collect any alleged deficiency balance unless GMAC has provided Named Plaintiff and members of the Class with timely pre-sale, post-sale and/or other required notices containing the information whose disclosure is mandated by CLEC, § 12-1021.

65.     This presents an actual, judicable controversy between the parties relating to the construction of the credit contract of Named Plaintiff and members of the Class and the application of Maryland's Credit Grantor Closed End Credit Provisions to those contracts because GMAC has sought or likely will seek to collect on the alleged deficiency balances, including through filing collection actions in court, and GMAC continues to harm Named Plaintiff and members of the Class by reporting false and derogatory information to credit reporting agencies regarding the accounts in question.

66.     Named Plaintiff and members of the Class have a right to be free from GMAC's attempts to collect deficiency balances, interest, fees, costs and other charges which are not collectible as a matter of law under the terms of their contracts with Named Plaintiff and members of the Class.

67.     The benefits to Named Plaintiff and members of the Class in obtaining an injunction outweigh any potential harm GMAC would incur as a result of an injunction, under the balance of convenience test, as GMAC has no legal or contractual right to collect deficiency balances from Named Plaintiff and members of the Class, and Named Plaintiff and members of the Class would greatly benefit from being relieved of GMAC's attempts to collect these illegal charges and to pressure them into making payments by reporting false and derogatory information to credit reporting agencies.

68.     Named Plaintiff and members of the Class will suffer irreparable injury unless the requested injunctions are granted, as GMAC will continue to attempt to collect, and will collect, deficiency balances, interest, costs, fees and other charges from them in violation of the law, and GMAC will report erroneous and derogatory information to the credit reporting agencies regarding Named Plaintiff and members of the Class based on the illegally imposed charges.

69.     The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing GMAC from violating the statutory and common law of the State of Maryland in its repossession and/or collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

70.     Named Plaintiff and members of the Class are likely to succeed on the merits of this action, as CLEC explicitly requires that GMAC send specific and mandatory pre-sale, post-sale and/or other notices containing information mandated by CLEC that comply with the statute to Named Plaintiff and members of the Class. GMAC did not send such timely and accurate notices.

**COUNT FOUR**
**(RESTITUTION AND UNJUST ENRICHMENT)**

71.     Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully

set forth herein.

72.    By paying money on deficiency balances, interest, fees, costs and other charges claimed by GMAC, Named Plaintiff and members of the Class conferred a benefit of these illegally collected charges upon Defendant.

73.    Defendant accepted the benefits conferred upon it by Named Plaintiff and members of the Class when it accepted the money paid toward illegally assessed deficiency balances, interest, costs, fees and other charges.  Further, Defendant was aware of, and had knowledge of, the benefits conferred on it, as it demanded those benefits.

74.    Defendant's collection, acceptance and retention of these charges, when Defendant was not entitled to the charges as a matter of law, was and continues to be unjust and inequitable. Defendant has not refunded the charges to Named Plaintiff and members of the Class.  Defendant should not be permitted to retain the benefits of those illegal charges.  Defendant's continued withholding of the illegal charges is improper.

75.    Named Plaintiff and members of the Class conferred these unjust benefits upon Defendant after and as a result of Defendant's misconduct as set forth herein.

## COUNT FIVE
## (MARYLAND CONSUMER PROTECTION ACT)

76.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

77.    Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia,* in the extension of consumer credit and in the collection of consumer debts.  CPA, § 13-303(3) and (4).

78.    As a "person" under the CPA, § 13-101(h), Defendant is prohibited from engaging in

unfair and deceptive trade practices.

79.     The CPA specifically prohibits Defendant from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers.  CPA, § 13-301(1).

80.     The CPA further prohibits Defendant from failing to state a material fact if the failure deceives or tends to deceive.  CPA, § 13-301(3).

81.     In violation of the CPA, § 13-303(3) - (4) and § 13-301(1), GMAC told Named Plaintiff and members of the Class in writing that (i) their vehicles would be sold at public sales when, in fact, they were sold at private sales, and (ii) they owed deficiency balances which, in fact, Named Plaintiff and members of the Class did not owe and which GMAC could not collect due to its failures to comply with CLEC.  By writing that the vehicles of Named Plaintiff and members of the Class would be sold at "public" sales without mentioning *any* deposit or entrance fee of any sort, GMAC also misrepresented that the public would be permitted to freely attend, observe and participate when, in fact, any persons wishing to attend, observe and/or participate would have to pay a $1,000 cash deposit or entrance fee. In these written communications with Plaintiffs and other members of the Class, GMAC engaged in misrepresentations and failures to state material facts which deceived and tended to deceive, and, again, violated the aforesaid sections of the CPA.

82.     These written statements were false and misleading and tended to and did deceive Named Plaintiff and members of the Class, many of whom made payments to Defendant which were not due and owing.  In violation of the CPA, § 13-303(3) - (4) and §13-301(3), GMAC failed to disclose to Named Plaintiff and members of the Class certain material facts, namely: (i) the purchaser's name, address, and business address; (ii) the number of bids sought, (iii) the number of bids  received; and (iv) the condition of the goods at the time of repossession which would cause their value to be

increased or decreased above or below the market value for goods of like kind and quality.   In

addition, GMAC told Named Plaintiff and members of the Class in writing that their vehicles would

be sold at public sales, that they could attend the sale, implying that Plaintiff and members of the

Class, along with the rest of the general public, could attend freely and bid at those sales, while

failing to state the material fact that a $1,000 cash deposit was required to attend or bid at those

sales, that the sales were not meaningfully advertised to the general public in a manner reasonably

calculated to induce members of the general public to attend the auction and bid at the sales, and that

the sales were, in fact, private sales.

83.     This failure to disclose material facts led Named Plaintiff or members of the Class to

make payments which were not due and which they would not have made had GMAC informed

them of the material facts. Defendant committed unfair and deceptive practices by collecting and

attempting to collect on alleged debts which, in fact, were not due and this conduct constitutes unfair

and deceptive trade practices in violation of the CPA, § 13-101 *et seq*., including §§ 13-303(3) and

(4), and §§ 13-301(1) and (3).

84.     As a result of Defendant's unfair and deceptive trade practices in violation of the CPA,

Named Plaintiff and members of the Class were induced to make payments to Defendant on

deficiency balances, causing Named Plaintiff or members of the Class injury and loss.

85.     In violation of the CPA, §§ 13-303(3) - (4) and § 13-301(1) and (3), and as part of an

effort to compel Named Plaintiff and members of the Class to make payments which were not due,

Defendant made false and misleading reports to credit reporting agencies regarding the amounts

which Named Plaintiff and members of the Class owed on their accounts.

WHEREFORE, Named Plaintiff and the Class pray that:

A.      The Court enter a declaratory judgment establishing that GMAC may not collect any

claimed deficiency balance, or any interest, fees, costs or other charges on a loan account of Named Plaintiff and members of the Class;

B.  The Court enter an order granting Named Plaintiff and members of the Class a preliminary and permanent injunction prohibiting GMAC from collecting or attempting to collect alleged deficiency balances, or interest, fees, costs or other charges from Named Plaintiff and members of the Class;

C.  The Court enter an order requiring GMAC within 30 days to notify all credit reporting agencies to whom it reports that (i) Named Plaintiff and members of the Class have a zero balance on their accounts, and (ii) removing any notation to the effect that the account has been charged off;

D.  The Court order that GMAC pay to Named Plaintiff and members of the Class the statutory penalties imposed by CLEC, § 12-1018(a)(2) by returning to Named Plaintiff and members of the Class all sums paid as interest, costs, fees or other charges on each account;

E.  The Court enter judgment in favor of Named Plaintiff and members of the Class against GMAC in the amount of all sums paid toward the claimed deficiency balance, interest, fees, costs and other charges on each account;

F.  Pursuant to CLEC § 12-1018(b), the Court enter judgment in favor of Named Plaintiff and members of the Class against GMAC in an amount three times the interest, costs, fees, and other charges which GMAC collected in excess of that allowed by CLEC;

G.  The Court enter judgment in favor of Named Plaintiff and the Class against GMAC for such compensatory damages as the evidence shall warrant;

H.      The Court enter an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and members of the Class;

I.      The Court award to Named Plaintiff and members of the Class reasonable counsel fees and the costs of these proceedings; and,

J.      The Court order such other and further relief as the nature of this case may require.

Respectfully submitted,


Dated: April 30, 2010                    /s/ Martin E. Wolf_____
                                         Martin E. Wolf (Bar No. 09425)
                                         mwolf@quinnlaw.com
                                         Benjamin H. Carney (Bar No. 27984)
                                         bcarney@quinnlaw.com
                                         102 West Pennsylvania Ave.
                                         Towson, Md. 21204
                                         Telephone: (410) 825-2300
                                         Facsimile: (410) 825-0066

                                         Mark H. Steinbach (Bar No. 26538)
                                         Steinbach@otrons.com
                                         O'TOOLE, ROTHWELL, NASSAU &
                                         STEINBACH
                                         1350 Connecticut Avenue, N.W., Suite 200
                                         Washington, D.C. 20036
                                         (202) 775-1550

                                         John J. Roddy (to seek admission *pro hac vice*)
                                         Elizabeth A. Ryan (to seek admission *pro hac vice*)
                                         RODDY, KLEIN & RYAN
                                         727 Atlantic Ave., 2d Floor
                                         Boston, MA 02111
                                         (617) 357-5500

                                         **Attorneys for Named Plaintiff and the Class**

## JURY TRIAL

Plaintiff demands trial by jury.

/s/Martin E.Wolf
Martin E. Wolf